DECISION
{¶ 1} Relator, Wally Frederick, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his application for permanent total disability compensation, and to issue a new order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In his objections, relator argues that the commission's order violates the requirements of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. In support of this argument, relator contends that the order issued herein is a boilerplate order of the type prohibited by Noll because the wording is similar to an order issued by the same staff hearing officer in another permanent total disability case. The order on which relator relies to show a Noll violation was not stipulated by the parties as evidence and, therefore, is not part of the record and may not be considered by this court. Section (G), Loc.R. 12 of the Tenth District Court of Appeals.
 {¶ 4} Relator also argues that the report of Dr. Lutz, on which the commission relied, is not some evidence to deny temporary total disability compensation. In his report, Dr. Lutz stated that relator is able to perform sedentary work. Relator argues that the report must be interpreted to say relator can perform all sedentary work when there are clear restrictions on his work ability and that it was the doctor's obligation to state what sedentary activities relator could perform. The commission, in its order, never stated that relator is capable of performing a full range of sedentary employment, nor is the commission required to make such a finding in order to deny permanent total disability compensation. State ex rel. Wood v. Indus. Comm. (1997),78 Ohio St.3d 414.
 {¶ 5} Therefore, for the foregoing reasons, relator's objections to the magistrate's decision are overruled. Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
PETREE, P.J., and WATSON, J., concur.
 IN MANDAMUS {¶ 6} In this original action, relator, Wally Frederick, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 7} 1. Relator has sustained two industrial injuries while employed as an automobile mechanic with respondent Pep Boys-Manny, Moe Jack of Delaware. Claim number 99-624459 is allowed for "torn right medial meniscus." Claim number 99-331517 is allowed for "bilateral carpal tunnel syndrome; compression bilateral ulnar nerve at the wrist."
 {¶ 8} 2. On January 8, 2001, relator filed an application for PTD compensation. In support of his application, relator submitted a report from Martin Fritzhand, M.D., dated November 6, 2000. Dr. Fritzhand opined that relator is permanently and totally disabled.
 {¶ 9} 3. On May 9, 2001, relator was examined, at the employer's request, by David C. Randolph, M.D., who reported:
 {¶ 10} "It is my opinion this claimant is capable of work-related activities in a sedentary to light physical demand characteristic level. There is absolutely nothing in this file to indicate that this claimant has any problem with activities such as sitting, standing or walking, bending, twisting or stooping. He indicates he is able to lift and carry objects weighing up to twenty pounds. This opens a vast array of employment opportunities to this claimant including virtually anything in the sedentary to light physical demand characteristic level. It is my opinion there is a reasonable chance that the claimant could even return to his previous level of employment, with certain restrictions as outlined above."
 {¶ 11} 4. On June 19, 2001, relator was examined at the commission's request by James T. Lutz, M.D. Dr. Lutz reported:
 {¶ 12} "CHIEF COMPLAINTS: Right knee pain, and numbness and tingling of both hands.
 {¶ 13} "HISTORY OF PRESENT ILLNESS: Wally Frederick is a 56-year-old male who sustained two industrial injuries as an auto technician. The claimant's routine duties included all types of auto repair work requiring extensive repetitive use and torquing of the upper extremities. On 10/27/99 the claimant twisted his knee while getting into a car. On 12/1/99 the claimant underwent a partial medial meniscectomy and chondroplasty of the right knee. By 1/31/99 the claimant states that he had developed significant numbness in both hands after continuous use of his hands while working as an auto mechanic for thirty-five years. The claimant underwent carpal tunnel release of both wrists, the right on 3/12/99 and the left on 5/12/99. Currently the claimant is under the care of an orthopedic specialist, Dr. Fox, whom he sees every three months. Currently his only medication related to his injuries of record is Vicodin. His current symptoms include intermittent, but daily pain of the right knee, typically worse upon arising. The claimant complains of occasional radiation of pain into the posterior calf area. The claimant also complains of occasional numbness over the bottom of the left foot. The claimant also notes occasional giving out of the left knee. He states his knee symptoms are aggravated with prolonged standing, repetitive bending, and with weather changes. Regarding his hands: The claimant complains of frequent numbness and tingling of both hands including the small fingers of both hands of roughly equal severity. He states that occasionally these symptoms will wake him up at night. He notes decreased strength in both hands, and states that he frequently drops objects. He feels that his loss of strength is more severe on the left than on the right.
 {¶ 14} "Regarding his activities of daily living: The claimant lives with his wife and son. He states he does do some housework such as washing the dishes and a little cooking. He also does some dusting and straightening. The claimant does drive, and utilizes his automobile for running errands. He typically goes grocery shopping with his wife, and frequently enjoys watching his nieces play ball.
 {¶ 15} "* * *
 {¶ 16} "PHYSICAL EXAMINATION: Revealed a well-developed male who stood 5' 6", weighed just over 200-pounds, with a blood pressure of 160/100, a pulse of 72, and a respiratory rate of 15. Examination of the right knee revealed several well-healed portal surgical scars. There were no structural deformities, swelling, or discoloration. Tenderness was noted both medially and laterally over the joint lines. Deep tendon reflexes of the lower extremities were 1+ on the right, and 2+ on the left. Gross sensation of the entire lower extremity was intact. There were no varus/valgus deformities, and all ligaments appeared intact, although the claimant did complain of pain with stress of the medial collateral ligament. There was no evidence of atrophy with both thighs measuring 43.5-centimeters in circumference at 10-centimeters above the superior poles of the patellae, and the right calf measuring 38-centimeters compared to 37.5-centimeters on the left at their widest girths. Manual muscle testing of the knee extensors and flexors was excellent at 5/5. Range of motion studies were as follows: Flexion 125 degrees, and extension to 0 degrees. Examination of both wrists revealed nearly symmetrical 3.0-centimeter surgical scars at the base of each palm in the midline. Both wrists were nontender to palpation, and normal sensation was intact bilaterally including two-point discrimination measuring 5.0-millimeters on all digits of both hands. There was no swelling, or atrophy involving either the thenar or hypothenar areas bilaterally. Tinel's was negative bilaterally. However, Phalen's was positive bilaterally. Manual muscle testing of the wrist extensors and flexors was excellent at 5/5, and range of motion studies were indentical bilaterally with flexion 60 degrees, extension 60 degrees, radial deviation 20 degrees, and ulnar deviation 35 degrees. Grip strength measured 45-kilograms on the right, and 35-kiklograms [sic] on the left. The claimant is right-hand dominant."
 {¶ 17} 5. In his narrative report, Dr. Lutz found that relator "warrants a 19% upper extremity impairment on the left and a 19% upper extremity impairment on the right."
 {¶ 18} 6. Dr. Lutz also marked a form captioned "Physical Strength Rating." By his mark, Dr. Lutz indicated that relator is capable of "sedentary work."
 {¶ 19} 7. The commission requested an employability assessment report from Julie Morrissey, a vocational expert. The Morrissey report, dated August 1, 2001, responds to the following query:
 {¶ 20} "Based on your separate consideration of reviewed medical and psychological options regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation or brief skill training."
 {¶ 21} Indicating acceptance of Dr. Lutz's reports, Morrissey listed the following employment options: "Addresser; Surveillance Monitor, Police Aide; Insurance Clerk."
 {¶ 22} 8. In support of his PTD application, relator submitted a vocational report, dated July 31, 2001, from William T. Cody. Mr. Cody opined that relator is PTD.
 {¶ 23} 9. Following a February 27, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 {¶ 24} "All of the relevant medical and vocational reports on file were reviewed and considered in arriving at this decision. This order is based upon the reports of Dr. Randolph, Dr. Lutz and Ms. Morrissey.
 {¶ 25} "The Application for Permanent and Total Disability filed 01/08/01 has been filed in two industrial claims. Both claims arise out of employment with the same employer while claimant was employed as an auto technician. The first claim is an occupational disease claim with a date of disability of 01/31/99. This claim is allowed for conditions involving the hands resulting from working as an auto mechanic for many years. The claimant has had bilateral carpal tunnel releases as the result of the conditions that are recognized in this claim. The second claim carries a date of injury of 10/27/99. This injury occurred when the claimant twisted his knee getting into a car. The claimant had right knee surgery in December of 1999. The claimant last worked on 01/26/00. The claimant has not participated in any rehabilitation or remediation program.
 {¶ 26} "Dr. James Lutz, Occupational Medicine, examined the claimant on 06/19/01 at the request of the Industrial Commission. To Dr. Lutz the claimant complained of intermittent but daily pain in the right knee, typically worse upon rising. The claimant also complained of occasional radiation of pain into the posterior calf area and occasional numbness over the bottom of the left foot. The claimant also noted occasional giving out of the left knee. He also noted aggravation of knee symptoms with prolonged standing, repetitive bending, and with weather changes. Regarding his carpal tunnel syndrome, the claimant complained of frequent numbness and tingling of both hands including the small finger of both hands. The claimant also noted occasional nocturnal awakening, decreased strength in the hands and frequently dropping objects. Regarding the activities of daily living, claimant advised that he does some house work such as washing dishes, cooking, dusting and straightening up the house. He further advised that he does drive and uses his car for running errands and for grocery shopping. After examining the claimant Dr. Lutz advised that the claimant has reached maximum medical improvement with regard to the conditions that are allowed in both claims. On the physical strength ratings form that is attached to his report, Dr. Lutz indicated that the claimant is capable of physical work activity. He further indicated that the claimant would be able to perform sedentary work.
 {¶ 27} "The Staff Hearing Officer finds that the claimant has reached maximum medical improvement. The Staff Hearing Officer further finds that the claimant retains the physical functional capacity to perform employment activities which are sedentary in nature.
 {¶ 28} "Ms. Julie Morrissey, Rehabilitation Counselor, prepared an Employability Assessment Report for the Industrial Commission on 08/01/01. Ms. Morrissey advised that if she accepted the residual functional capacities opinion of Dr. Lutz claimant would be able to perform the following jobs immediately: Addresser; surveillance monitor; police aide; and insurance clerk. She further advised that the claimant's age of 55 years, tenth grade education, and singular work history as a mechanic could be expected to be a moderate barriers [sic] to the claimant with regard to his ability to adjust to performing alternate work. She further advised, that the claimant notes well developed literacy and basic math skills, because no remediation is necessary for the claimant to acquire the skills to perform entry level sedentary work. Ms. Morrissey described the claimant's work history as having involved skilled skill level and medium strength level activities. She further advised that in his work history claimant has demonstrated high school reasoning and seventh to eighth grade math and language skills. She further advised that the claimant has demonstrated mostly average aptitudes in his work history. She further advised that the claimant has demonstrated the following temperaments in his work history: Doing precise work to close tolerances; making judgments and decisions; and changing tasks often to perform varied duties.
 {¶ 29} "The Staff Hearing Officer find[s] that the claimant is 55 years of age with a tenth grade education and no GED. The Staff Hearing Officer further finds that the claimant has special vocational skills as an automobile technician and an automobile inspector. The Staff Hearing Officer further finds that the claimant is able to read, write and perform basic math well.
 {¶ 30} "The Staff Hearing Officer finds that the claimant's age of 55 years would be a moderate barrier to the claimant with regard to his ability to return to and compete and [sic] in the workforce. The Staff Hearing Officer further finds, however, that age alone is not a factor which would prevent the claimant from returning to work. The Staff Hearing Officer further finds that the claimant's tenth grade education without a GED would be a moderate barrier to the claimant with regard to his ability to return to and compete in the workforce. The Staff Hearing Officer further finds, however, that the claimant has never had greater than a tenth grade education and it has not prevented the claimant from working in the past. The Staff Hearing Officer further finds that the claimant's limited education not only has not prevented the claimant from working, but has not prevented the claimant from learning to perform skilled employment activities. The Staff Hearing Officer further finds that the fact that the claimant has performed skilled employment activities in that [sic] past is evidence that the claimant possessed the intellectual capacity to learn to perform at least unskilled and semi-skilled activities in the future. The Staff Hearing Officer further finds that although the claimant has only a tenth grade education, claimant is able to read, write and perform basis [sic] math well. The Staff Hearing Officer further finds that the fact that the claimant is able to read, write and perform basic math would be an asset to the claimant with regard to his ability to learn to [sic] new work rules, work skills and work procedures necessary to perform some other type of employment. The Staff Hearing Officer further finds, based upon the report of Ms. Morrissey, the claimant's well developed literacy and math skills should be sufficient for the performance of many entry level sedentary jobs. The Staff Hearing Officer further finds that although the claimant may have no transferable skills from his prior work history, the fact that claimant learned to perform skilled employment activities in spite of his limited education is evidence that the claimant is able to benefit from on the job training. The Staff Hearing Officer further finds that the claimant retains the physical functional capacity to perform employment activities that are sedentary in nature. Based upon the report of Ms. Morrissey that Staff Hearing Officer finds that the claimant is able to perform the following jobs immediately: Surveillance system monitor; police aide; and insurance clerk. The Staff Hearing Officer therefore finds that the claimant is capable of sustained remunerative employment and is not permanently and totally disabled. The claimant's Application for Permanent and Total Disability, filed 01/08/01, is therefore denied."
 {¶ 31} 10. On April 12, 2002, the commission mailed an order denying reconsideration of its February 27, 2002 SHO's order.
 {¶ 32} 11. On December 5, 2002, relator, Wally Frederick, filed this mandamus action.
Conclusions of Law:
 {¶ 33} Two issues are presented: (1) whether the commission's order must be viewed as "boilerplate" and on that basis a violation of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and (2) whether the commission based its non-medical analysis on a residual functional capacity which is not supported by some evidence.
 {¶ 34} The magistrate finds: (1) the commission's order cannot be viewed as "boilerplate" or a violation of Noll, and (2) the commission did not base its non-medical analysis on a residual functional capacity which is not supported by some evidence.
 {¶ 35} Turning to the first issue, relator asks this court to compare the SHO's order of February 27, 2002 at issue here with an order issued by the same hearing officer denying the application of another PTD applicant. The SHO's order denying the application of another PTD applicant is attached to relator's brief but is not stipulated by the parties nor certified by the commission as being one of its orders. Because the SHO's order denying the application of another PTD applicant is not stipulated by the parties nor certified in accordance with Loc.R. 12(G), it cannot be considered by this court in this action.
 {¶ 36} Turning to the second issue, although relator does not contend that Dr. Lutz's mark on the physical strength rating form cannot be considered some evidence that relator is capable of some types of sedentary work, relator does contend that the commission misconstrued the mark to indicate that relator can medically perform all types of sedentary work. Consequently, relator argues that the commission's non-medical analysis is incorrectly premised upon a range of jobs that relator is physically unable to perform.
 {¶ 37} The fact is that Dr. Lutz marked the form to indicate that relator can perform "sedentary work" without qualification. The fact is that Dr. Lutz's description of the physical examination finds very little wrong with relator's upper extremities. While Phalen's was positive bilaterally, manual muscle testing of the wrist extensors and flexors was "excellent at 5/5." Grip strength measured "45 kilograms on the right, and 35-kiklograms [sic] on the left."
 {¶ 38} While relator here asserts that "all medical evidence on record indicates that Relator cannot perform hand intensive work based on his allowed medical conditions," that assertion is not supported by the reports of Dr. Lutz upon which the commission relied. Relator also asserts that his "allowed conditions proscribe repetitive hand usage." Again, that assertion is not supported by Dr. Lutz's reports. (Relator's brief at 10.)
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.